UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

DARRYL G. GRIGSBY
    *Petitioner,*

Electronically Filed

CASE NO: __3:17-CV-463-CRS__

VS.

**PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C.A. §2254**

DON BOTTOM, in his official capacity as
    Warden of Northpoint Training
    Center,
    *Respondent.*

Comes the Petitioner, Darryl G. Grigsby, by counsel, and pursuant to 28 U.S.C. § 2254 files this Petition for Writ of Habeas Corpus, and asks this court to order that he be released from the custody of the Respondent and the Commonwealth of Kentucky, to order the Commonwealth of Kentucky to set aside and vacate his convictions and sentences for Murder, Arson in the Third Degree (Arson III) and Tampering with Physical Evidence (TWPE), and for any other relief which law and justice require in this matter.

**NOTICE OF INTENT TO SUPPLEMENT**

This petition is filed as a "bare bones" petition intended to raise all claims which the undersigned has a good faith basis to believe are viable, in sufficient detail to ensure that the petition is timely filed and preserves those issues. Shortly after filing this Petition, the undersigned will file a request for a briefing schedule which would permit the undersigned to complete her investigation, to brief the issues more fully, and possibly to add or withdraw claims. The current document is not intended as an exhaustive discussion of the claims presented.

1

## I. PARTIES

1. Petitioner is Darryl G. Grigsby, and he is currently in the custody of the Commonwealth of Kentucky, Department of Corrections, at Northpoint Training Center, P.O. Box 479, Highway 33, 710 Walter Reed Road, Burgin, Kentucky 40310.

2. Respondent is Don Bottom, Warden of the Northpoint Training Center, P.O. Box 479, Highway 33, 710 Walter Reed Road, Burgin, Kentucky 40310, and he is represented by Andrew Beshear. Attorney General of the Commonwealth of Kentucky.

## II. PROCEDURAL HISTORY

3. On May 31, 2006, Petitioner, Darryl G. Grigsby (Mr. Grigsby) was indicted in the Jefferson Circuit Court, Division Five, for murder, Robbery in the First Degree (Robbery I), Arson III, two counts of TWPE, abuse of a corpse, and for being a persistent felony offender in the second degree (PFO II). Indictment No. 06-CR-01771, TR Vol. I at 1. The Commonwealth of Kentucky served notice that it would seek the death penalty for the Murder charge. *Id.* at 16.

4. On October 5, 2007, Mr. Grigsby pleaded guilty pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970) to murder, two counts of two counts of TWPE, and Arson III (Exhibit 1). Under the plea agreement, the sentences were to run concurrently for a total sentence of life imprisonment without the possibility of parole for twenty (20) years. The charges of robbery and abuse of a corpse were dismissed. Judgment was entered the same day. Exhibit 2.

5. Mr. Grigsby appealed the conviction and sentence to the Supreme Court of Kentucky (Case No. 2009-SC-000171-MR), alleging that his attorneys had failed to advise him that he could enter an open or "blind" plea and demand jury sentencing. On January 21, 2010, the Kentucky Supreme Court affirmed the conviction and sentence. Opinion, *Grigsby v.*

*Commonwealth*, 302 S.W.3d 52 (Ky. 2010), Exhibit 3. Petitioner did not file a petition for certiorari in the Supreme Court of the United States.

6. On April 7, 2011, acting *pro se*, Mr. Grigsby initiated a state post-conviction action in the Jefferson Circuit Court pursuant to RCr 11.42, alleging that his attorneys provided ineffective assistance of counsel in incorrectly advising him that he was eligible for the death penalty; and failing to pursue the defense of self-defense or extreme emotional disturbance. The Kentucky Department of Public Advocacy (DPA) was appointed to represent Petitioner Grigsby and filed a supplement to his Motion.

7. On October 1, 2013, the Jefferson Circuit Court denied Petitioner's Motion. On October 10, 2014, DPA filed a Motion for Amendment under CR 52.02 and Motion to Alter, Amend, or Vacate a Judgment under CR 59.05 asserting that the Court found facts not supported by the record and should have held an evidentiary hearing. This Motion was denied on January 27, 2014.

8. Petitioner appealed the denial of his Motion to the Kentucky Court of Appeals (Case No. 2013-CA-002142). On October 2, 2015, the Court of Appeals entered its Opinion affirming the Jefferson Circuit Court.

9. On October 28, 2015, Petitioner filed his Motion for Discretionary Review in the Supreme Court of Kentucky (Case No. 2015-SC-000624). On August 17, 2016, the Court entered its Order denying discretionary review. Petitioner did not file a petition for certiorari in the Supreme Court of the United States.

### III.   JURISDICTION OF THE COURT

10. Mr. Grigsby has exhausted each claim he advances in this Petition in the courts of Kentucky. As such, jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331, 2241 and

2254. Additionally, Petitioner is timely filing this Petition within the one-year time limit imposed by 28 U.S.C. § 2244(d)(2), based upon the timely filing of the Motion for Discretionary Review.

## IV. PRIOR ATTORNEYS

11. The following addresses in this section are the current addresses listed by the Kentucky Bar Association for each attorney.

12. At the trial level, the following attorneys represented Petitioner: Michael Lemke and Michael Ferraraccio, Deputy Louisville Metro Public Defenders, 735 West Jefferson Street, Louisville, Kentucky 40202.

13. On direct appeal, the following attorneys represented Petitioner: James David Niehaus, Deputy Appellate Public Defender, 735 West Jefferson Street, Louisville, Kentucky 40202.

14. In the state post-conviction litigation of the CR 60.02 Motion, Petitioner was represented in the Kentucky Court of Appeals in Case No. 2014-CA-00469 from February 2014 to July 30, 2014, by the Kentucky Department of Public Advocacy, 5 Mill Creek Park, Section 101, Frankfort, Kentucky, 40601-9230.

15. At all other stages, Petitioner proceeded *pro se.*

## STATEMENT OF FACTS

16. Petitioner readopts and realleges the foregoing as if fully set forth herein.

17. On May 5, 2006, Petitioner met the victim, Tiphanie Durham, and her friend Nichole Hayes, while shopping. After small talk, they exchanged telephone numbers; Grigsby flashed a large sum of cash and promised Durham he would buy her an outfit if she accompanied him to the Jefferson Mall and help him continue shopping for his son. Grigsby followed the two women to the Jefferson Mall to continue shopping.

18. According to Ms. Hayes, Ms. Durham called Jamaine Russell ("Bub") to set up and rob Grigsby (LMPD Interview, page 042). At approximately 3:30 p.m., after leaving the mall and cashing a check for $34.00 at a bank, Ms. Hayes dropped Durham off at Russell's residence (LMPD Interview, Page 034). Later that day, Grigsby called Durham, asking her out to dinner. Ms. Durham called Russell once again, "[talking] about robbing a guy…with $10,000 or $11,000 thousand dollars," stating that she "needed some of that" (LMPD Interview, TR page 143)

19. Vaniesha Burks ("Nisha") picked Durham up and dropped her off at Grigsby's house so she could go out with Grigsby (LMPD Interview TR 132). Ms. Durham called Russell three times while out at dinner with Grigsby, according to Russell: "She spoke about robbing somebody… she just said somebody had like ten to twelve thousand dollars, I want it…" The two then got a motel room at a Super 8 motel. The desk clerk, David Busby, told investigators that Durham had actually told him that she had come to the motel intending to rob Petitioner, "but my cousin backed out and I don't know how to get out of this situation I'm in" (DPA Interv., Exhibit 4)

20. Durham went back to the room, apparently still hoping to rob Grigsby. She made a call, went back down to the lobby, walked out the door and got into a dark SUV driven by a black male subject of "average build and had dreadlocks or long braided hair." (DPA Interview of David Busby at 018). After a while she went back up to the room, got Grigsby, came back down and got into the white SUV with Grigsby.

21. Durham asked that Grigsby take her to Cox Park. Shortly thereafter, Grigsby noticed a dark colored SUV had been following him for some time, and made a series of turns in an attempt to evade the vehicle. He then pulled over and got out of the SUV to question the driver as to why he had been following him.

5

22.     As Grigsby approached the dark SUV, the driver got out of the SUV wearing a mask, pointed a gun to his face and demanded that Grigsby get back in his vehicle. The gunman followed closely behind Grigsby, got in the back seat while Grigsby got in the driver's seat. The gunman demanded "Give me all your money, both of you."

23.     Less than a year previously, Petitioner Grigsby had been robbed and shot. Petitioner believes in good faith that he was suffering from post-traumatic stress disorder (PTSD) from that event.

24.     When the gunman turned his attention to Durham, Grigsby saw an opening, reached back toward the gunman and tried to take the gun from the robber. During the struggle for the gun Durham was shot and killed. The gunman escaped. Petitioner, under extreme emotional disturbance, attempted to dispose of the body by fire.

25.     Two days later, an anonymous caller called the Louisville Metro Police Department Crime Tip Line and stated he was 100% sure that "A B/M, 24 years old, who goes by the name of RA-Ra is the one who killed the girl on T.V. and was burned. (Call tip Sheet, May 8, 2006; Discovery at 120).

26.     Petitioner believes in good faith that the anonymous tipster was Mr. Russell, a/k/a "Bub," the owner of the dark SUV, whom Petitioner believes to be the masked gunman. There are only two people alive that know what actually happened: Petitioner, and the robber who is still at large for his role in the robbery and death of Tiphanie Durham.

## GROUNDS FOR RELIEF

27.     Petitioner readopts and realleges the allegations of Paragraphs One (1) through Twenty-Six (26) of the Petition the same as if fully set forth therein.

28. Petitioner was denied due process and effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution when counsel failed to properly investigate and challenge his identification.

29. There was substantial evidence available to counsel that a second black male, with long dread locks or braids, was involved in the events leading to Durham's death that went unchallenged by trial counsel.Because. it went unchallenged, Durham was only seen as a victim, and not an accomplice to robbing Grigsby.

30. Investigators from the Department of Public Advocacy interviewed Mr. Busby who worked at the Motel 8; who was the last witness to see Durham alive, described the person he saw as "average build and had dreadlocks or braids."

31. Trial counsel failed to investigate the misconduct of the LMPD during the photo line-up that led to irreparable misidenti- fication when the LMPD conducted a first photopack after which the witness Busby could not identify Grigsby, so the LMPD placed a old photo of Grigsby where Grigsby had braids to match the witness's description of the person that came into the hotel as having "dreadlocks or long braids." Busby was then able to pick Grigsby out the second time.

32. The two vehicles involved were also significantly different. Busby described the vehicle he saw as "a black SUV that had cream wheels (Pub Adv. Invest, Sept. 21, 2007; David Busby); but according to the two women, Grigsby was driving a "white SUV (Tahoe) missing the letter 'O'," which happened to be the same SUV that was burned in the fire. (RCr 11.42 Motion at 23).

33. Trial counsel's failure to challenge the photo line-up deprived Grigsby of a fair and impartial trial. Trial counsel knew "Bub" had a SUV that matched the description given by the

7

motel clerk. Trial counsel even pulled Jermaine "Bub" Russell's DMV record showing that he did own a dark blue Chevrolet Suburban at the time of the crime (Exhibit 4).

34.     Trial counsel's unprofessional performance denied Grigsby the right to effective assistance of counsel guaranteed by the sixth Amendment of the U.S. Constitution. Trial counsel's failure to challenge the identification deprived Grigsby a defense that he was set up by Durham and her accomplice "Bub", that Durham was not robbed but Durham and her accomplice robbed Grigsby, and in the course of the robbery, a struggle for the gun ensued that lead to the death of Durham. *Strickland v. Washington,* 466 U.S. 687.

35.     Had trial counsel pursued the information from their investigators, and reviewed this information with Grigsby, Grigsby would not have accepted the plea but would have gone to trial because he would have qualified for manslaughter First degree. But for counsel's unprofessional error, the result would have been different. *Strickland,* 466 U.S. at 694.

36.     Trial counsel failed to advise client as to extreme emotional disturbance as a defense to murder.

37.     "It is crucial to a defendant's fundamental right to due process that he be allowed to develop and present any exculpatory evidence in his own defense, and we reject any alternative that would imperil that right." *McGregory v. Hines*, 995 S.W. 2d 384, 388 (Ky. 1999).

38.     The right to present a defense includes the right to be heard; to present evidence central to the defense; to call witnesses to testify; and to rebut evidence by the prosecution. U.S. Constitution, Amdts. VI, XIV; Ky. Const. §§1, 11.

39.     Although Grigsby stated in his RCr 11.42 motion that his claims of EED and self-defense were a defense to Capital Murder (page 14-15); KRS 504.070 in fact authorizes the

8

Commonwealth to obtain a mental examination if the defendant gives notice of his intent to introduce evidence of mental illness or insanity at trial. KRS 504.070 (1) and (2).

40. In the instant case, trial counsel filed a motion for to offer evidence of mental disease or mental defect 7 days prior to trial (Exhibit 5), and the Motion was denied because trial counsel filed his motion too late.

41. Grigsby states that although his counsel filed a motion for mental defect after the Court ordered a psychological examination, trial counsel's failure to prepare a defense of EED, coupled with his counsel's failure to file the Motion in a timely manner, deprived him of a fair and impartial trial.

42. After Grigsby's commitment to the Kentucky Department of Corrections, legal aides uncovered through a full consultation that Grigsby had been robbed, shot and left for dead prior to this incident which lead to Grigsby EED episode. It was at this time Grigsby sent for his medical records from University Hospital (RCr 11.42 attachment A7-A11}; where it supports that "Twenty-four-year old male states that he was sitting, eating dinner and unknown assailant shot him." Grigsby was robbed while sitting in his vehicle.

43. The trial court found that trial counsel's election not to pursue an EED strategy was reasonable under the circumstances of the case. Exhibit 5 at 5.

44. In order to raise an EED defense, the evidence must show: (1) A sudden and uninterrupted triggering event, (2) that resulted in the defendant being extremely emotionally disturbed, and (3) that the defendant acted under the influence of the disturbance. *Spears v. Commonwealth*, 30 S. W. 3d 152, 155 (Ky 2001).

45. Grigsby states that the moment he was robbed triggered the memory of when he was robbed less than a year prior, shot, and left for dead. He wanted to run away, but again a gun

9

was pointed directly at him; he reacted to the fact that at that very moment he had to fight or possibly be killed.

46. Trial Counsel's failure to timely file the motion deprived him the defense of EED in mitigation to capital murder. In *Coffey v. Messer*, 945 S.W. 2d 944, 945 (Ky. 1997) the Court declared

> Even if EED falls within the category 'any other mental condition,' it does not bear upon the issue of guilt, since EED is not a defense, but only a mitigating factor which serves to reduce murder to the lesser offense of 1st degree manslaughter. *See also, e.g., Gall v.. Commonwealth*, 607 S.W. 2d 97, 108 (Ky 1980) (overruled on other grounds) It is in fact, a defense to the extent that its presence precludes a conviction of Murder. KRS 507.020 (l)(a). We have often characterized EED as a defense, and it is referred to as a "defense to the crime" in the mitigating circumstances section of our capital penalty statute KRS 532.025 (2)(b)(2).
>
> Evidence of Extreme Emotional Disturbance entitles a defendant who is charged with murder, to an instruction on the lesser included offense of first Degree Manslaughter KRS 507.030 (1)(b). Although a lesser included is not a defense within the technical meaning of those terms as used in the penal code, it is, in fact and principle, a defense against the higher charge.*Gall,* Supra at 108.

47. Grigsby states that the Court was probably right in its Opinion and Order that Grigsby trial counsel decision not to pursue EED or self defense was a reasonable trial strategy under the circumstances of the case, because trial counsel dropped the ball when he filed the Motion for a Mental Defect too late, which left him with no other defense but to push for a plea bargain for twenty years to life, without telling Grigsby of the EED defense, and counsel's failure to disclose that he filed the motion too late.

48. Trial counsel's failure to timely file the Meritorious motion for Mental defect was extremely deficient, and the law is clear that failure to "file a meritorious pre-trial motion can amount to ineffective assistance of counsel. *Strickland,* 466 U. S. 668, 687 (counsel's performance

10

was outside the wide range of prevailing professional norms based on an objective standard of reasonableness). Trial counsel's errors deprived Grigsby the right to a lesser included offense and a lesser penalty range from a Class A felony of 20 years to life in prison, to a class B Felony with a range of 10 years to 20 years.

49. Trial counsel's performance was egregiously prejudicial to the outcome of Grigsby plea agreement for failure to file a timely mental defect defense which is supported by the psychological evaluation and Grigsby's medical report from less than one (1) year prior were he was robbed, shot and left for dead, triggering his EED. Grigsby would have gone to trial had counsel timely filed the motion for mental defect, or would have been offered a plea to the lower offense.

50. Petitioner was denied the right to a fair and impartial trial when trial counsel failed to acknowledge an alternate theory of the case. The supposed victim was killed while attempting to rob appellant with an accomplice. This case simply did not qualify as a capital murder case.

51. There is absolutely no evidence in the Record that Durham was ever robbed of anything whatsoever. The only possession of Ms. Durham's in the possession of another was a cellphone which detectives recovered from another man, Henry Husky, a friend of Ms. Durham's.

52. The Jefferson Circuit Court's Opinion and Order denying the RCr 11.42 Motion stated that on July 5, 2006, "the Commonwealth filed notice that it would seek the death penalty for the murder, as its proof at trial would show that Grigsby shot Durham during the course of a robbery." Exhibit 5 at 1. The Court goes on to state that while the charge of robbery in the first degree was dismissed as part of Grigsby's plea agreement, it could have been considered an aggravating circumstance had the matter gone to trial. *Id.* at 4, *citing* KRS 532.025.

53. There was no evidence Durham was ever robbed, nor evidence of property or money robbed from Durham. There was, on the other hand, evidence that Durham actually attempted to rob Petitioner with the help of an accomplice. Moreover, there was evidence that Petitioner Grigsby's prior experience had left him vulnerable to extreme emotional disturbance at being robbed and threatened with a gun.

54. KRS 532.025(b)(2) states that it is a mitigating circumstance that the "capital offense was committed while the defendant was under extreme mental or emotional disturbance."

55. KRS 503.050 states in pertinent part:

> (1) The use of physical force by a defendant upon another person is justifiable when the defendant believes such force is necessary to protect himself against the use of imminent use of unlawful physical force by the other person.
>
> (2) The use of physical force by a defendant upon another person is justified under section (1) only when the defendant believes that such force is necessary to protect himself against death, serious physical injury…

56. Trial Counsel's failure to investigate Petitioner's claim of self-defense is not reasonable when the record of the investigation reveals that Ms. Durham along with an accomplice attempted to rob Grigsby.

57. In this regard, the state court opinions in this case have uniformly held that both a defense of self-defense and EED are mutually exclusive. The facts are that there was enough factual support to address at least an imperfect self-defense defense and an EED defense. The fact that Ms. Durham's body was burned appears to have stopped this aspect of the defense of Darryl Grigsby in its tracks. However, that act—terrible though it is—is not an aggravator. In light of the fact that there was no real evidence that Grigsby robbed Ms. Durham, counsel had a duty to address the extent to which the facts supported each of the defenses.

58. Trial counsel's failure to explore self-defense as a defense to Murder deprived Grigsby of an acquittal at trial or a conviction on a lesser included offense, where Grigsby would not be subject to the death penalty. Trial counsel's performance was deficient and outside the wide range of prevailing norms based on an objective standard of reasonableness, for any competent attorney would have explored at a minimum with his client self-defense as a strategy prior to accepting a plea of guilt to murder. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2064; *Bowling v. Commonwealth*, 981 S.W. 2d 545, 551 (1999). But for trial counsel's error, Grigsby would have gone to trial. There is a reasonable probability that but for counsel's error the result would have been different. *Strickland,* 446 U.S. 694, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome considering the totality of the evidence before the jury. *Strickland*, 466 U.S. at 694-95; *see also Moore v. Commonwealth*, 983 S.W. 2d at 484, 488; *Foley v. Commonwealth*, 17 S.W. 2d at 884.

59. Finally, Petitioner Grigsby received ineffective assistance of counsel under the sixth amendment during the plea negotiation. His decision to plead guilty was not intelligently, knowingly or voluntarily given.

60. The test for determining the validity of a guilty plea is whether or not the plea represents a voluntary and intelligent choice among the alternative course of actions open to the defendant. *North Carolina v. Alford*, 400 U.S. 25 (1970). The guilty plea may be rendered invalid if the defendant received constitutionally ineffective assistance of counsel under the Sixth Amendment. *Cuyler v. Sullivan*, 466 U.S. 335, 244, 100 s. ct 1708, 1716, 64 L. Ed 2d 333 (1980); *Shelton v. Commonwealth*, 928 S.W. 2d 817 (Ky. App. 1996).

61. Although Grigsby did make a confession in open court that he was pleading guilty pursuant to *Alford*, supra, his confession was made on the misadvice of his defense attorneys. This

rendered his confession invalid because it violated his substantive right to effective assistance of counsel guaranteed by the 6th Amendment. *McMann v. Richardson*, 397 U.S. 759, 90 S. Ct 1441, 25 L. Ed 2d 763, 773 (1970).

    62.    Petitioner states that trial counsel was not acting as the counsel guaranteed by the Constitution in the following ways:

        1)    Counsel never challenged Petitioner's identification or pursued evidence relating to the second black male, Durham's accomplice.

        2)    Counsel failed to timely file a motion to present evidence of mental disease or defect, which deprived him of a lesser included offense.

        3)    Trial counsel failed to explore a defense of self-defense;

        4)    Grigsby's case, after investigation, did not qualify as a Capital Murder case for the Death penalty.

        5)    Trial counsel never had an in-depth interview and investigation that would have uncovered items above and addressed them so that Petitioner Grigsby would be sufficiently well informed to make a knowing, intelligent, and voluntary decision in accepting or rejecting a plea to murder (20 years to Life).

        6)    Unbeknownst to Grigsby, trial counsel had filed a motion for mental defect late, and the motion was denied because it was filed only 7 days before trial. It must be filed prior to twenty days before trial.

    63.    Counsel embarked upon a campaign to coerce Grigsby to take a plea by telling him that he did not want to risk Grigsby being put to death; that he did not want to take the case to trial; that he did not believe that he could win at trial; and that it was in his best interest to take a plea of twenty (20) to life, even though the evidence showed that Durham and her accomplice actually

tried to rob Grigsby, and Grigsby was attempting to defend himself and was suffering from the trauma of the prior robbery and shooting.

64. Grigsby states that his guilty plea did not represent a voluntary and intelligent choice among the alternative courses of action open to him. *Alford*, *supra*. Petitioner believes in good faith that a defense of EED and. even an imperfect self-defense argument at trial was a better course of action than the guilty plea.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner, Darryl Grigsby, prays this Court as follows:

A. To issue a writ of habeas corpus that the Petitioner be brought before the court to be discharged of his unconstitutional confinement and relieved of his unconstitutional conviction and sentence;

B. To issue a writ conditioned on the state court providing a new trial;

C. To order the Respondents to produce the video records and court record from the trial level and post-conviction level as are deemed just and appropriate under Rule 5;

D. To grant Petitioner, upon his request, the authority to obtain subpoenas *in forma pauperis* for witnesses and documents necessary for an evidentiary hearing;

E. To order the Commonwealth to nullify his convictions of Murder two counts of Tampering with Physical Evidence, and Arson III.

F. To order a briefing schedule, which would permit counsel for Petitioner a period of time to amend this petition if necessary, as described above, and require the Warden to file an Answer to Petitioner's habeas petition;

G. To permit Petitioner to file a motion to expand the record, if necessary;

  H. To grant Petitioner the right to conduct discovery if requested in a separately filed motion;

  I. To order and conduct an evidentiary hearing where proof may be offered and argument advanced concerning the allegations in this petition, which Petitioner will almost certainly request in a separate motion after the Warden files an Answer or other responsive pleading;

  J. Assuming Petitioner does not prevail on all his claims, to allow him to file a motion explaining why a certificate of appealability (COA) should be granted on any claims this Court denies relief on before deciding whether to issue a COA on the various claims; and

  K. Any and all other relief to which Petitioner may appear entitled.

        Respectfully submitted,

        /s/ Maureen Sullivan
        MAUREEN SULLIVAN
        Kentucky Home Life Building
        239 South Fifth Street, Suite 1700
        Louisville, Kentucky 40202
        (502) 548-1699
        sullivanappellatelaw@yahoo.com

## VERIFICATION

I, Maureen Sullivan, declare under penalty of perjury as follows:

 1. I am an attorney admitted to practice before this Court.

 2. I represent Darryl Grigsby.

 3. I make this verification as someone acting on behalf of Mr. Grigsby pursuant to 28 U.S.C. §2242.

 4. I wrote the foregoing petition, and I am thoroughly familiar with its contents. Some of the information contained in the Petition is information that I know to be true and correct based

on my personal knowledge. The remaining information in the Petition is true and correct to the best of my knowledge, information, belief, and understanding.

                                                                                      /s/ Maureen Sullivan_____
                                                                                      MAUREEN SULLIVAN